**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| United States of America, | ) | CR 97-0466-PHX-SMM |
| Plaintiff, | ) | |
| v. | ) | **ORDER** |
| Francisco Tenorio-Quintero, | ) | |
| Defendant, | ) | |
| and | ) | |
| First American Title Insurance Company, | ) | |
| Garnishee; | ) | |
| First American Title Insurance Company, | ) | |
| Counterclaimant, | ) | |
| v. | ) | |
| Flavio Tenorio, Juan Tenorio, Francisco Tenorio, Aurelio Tenorio, Filiberto Tenorio, United States of America, Internal Revenue Service, Weiss, Moy & Harris, P.C., an Arizona Professional Corporation, Ross, Dixon & Bell, L.L.P., a California limited liability partnership, | ) | |
| Defendants. | ) | |

Pending before the Court is First American Title Insurance Company's ("First American") Request for an Order Granting its Complaint in Interpleader, Discharging it, and Awarding it Attorneys' Fees and Costs (the "Motion for Discharge"). (Dkt. 807.) For the following reasons, the Court dismisses First American's interpleader action for lack of subject matter jurisdiction.

## BACKGROUND

This criminal case arose in October 1997, when an Indictment was returned against eighteen defendants including Juan Tenorio ("Juan"), Flavio Tenorio, Francisco Tenorio, Aurelio Tenorio, and Filiberto Tenorio (collectively with the exception of Juan, the "Tenorio Brothers"). (Dkt. 133.) In December 1997, Juan pleaded guilty; in the spring of 1999, each of the Tenorio Brothers entered guilty pleas. (Dkts. 236, 484-486, 488.) In January 2000, each of the Tenorio Brothers was sentenced to 13 months custody, three years supervised release, and a $375,000 fine. (Dkts. 600, 602, 604, 606.) In March 2000, Juan was sentenced to three years probation and a $24,000 fine. (Dkt. 713.)

On July 21 and 29, 2005, pursuant to Fed.R.Civ.P. 15, First American filed a Motion to Amend Answer and Counterclaim to assert an interpleader action adding nine parties as claimant-defendants. (Dkts. 791, 792.). On July 29, 2005, this Court permitted First American to file an amended answer and a counterclaim for interpleader based on the following allegations:

> First American is acting as an Account Servicing Agent under a Judgment issued by the Honorable James Marlar in In re Leasco, Inc., Case No. 03-BK21422-JMM. On February 24, 2005, Judge Marlar issued a partial judgment in In re Leasco, Inc., awarding the Tenorio Brothers $3,338,874, together with "simple interest at the rate of twelve percent (12%) per year" on any balance of principal. Judge Marlar ordered Leasco to pay the judgment in monthly installments of $25,000 plus interest. (Dkt. 790, attachmt at 3.)

1  On April 7, 2005, the United States served each of the Tenorio
2  Brothers and First American as "Garnishee" with applications for writs of
3  garnishment in the amount of $422,646.53, $391,861.82, $424,715.64, and
4  $397,328.24. (Dkts. 782-785.)  These amounts represented total balances
5  due on each of the four Tenorio Brothers' fines plus interest at the rate of
6  5.997 percent. (Id.)

7  On April 11, 2005, Fletcher Paddison, on behalf of Ross, Dixon &
8  Bell, L.L.P. ("Ross"), Weiss, Moy & Harris ("Weiss"), and Richard Grant
9  (collectively, "Counsel"), sent a letter to the Internal Revenue Service (the
10  "IRS"), counsel for Leasco, and First American stating that the $3.3 million
11  judgment in favor of the Tenorio Brothers "was obtained as a result of the
12  combined efforts of the firms of" Ross, Weiss, and Grant (the "Demand
13  Letter"). (Dkt. 790, attachment 2 at 1.)  The Demand Letter stated that the
14  Tenorio Brothers owed Counsel more than $160,000 in costs and
15  $1,600,000 in legal fees, which were subject to "both a lien and security
16  interest" and "a formal security interest recorded on February 28, 2005."
17  (Id.) Mr. Paddison acknowledged a levy filed by the IRS on amounts
18  deposited with First American, but asserted that Counsel's interests were
19  superior to any third party claim and demanded that First American make
20  "[a]ll further payments . . . directly to Counsel." (Id.)

21  Nine parties have asserted "conflicting interests" in an account in
22  which First American currently controls $127,942.01.

23  **DISCUSSION**

24  In an interpleader action, the "stakeholder" of a sum of money sues all those who
25  might have claim to the money, deposits the money with the district court, and lets the
26  claimants litigate who is entitled to the money. Cripps v. Life Insurance Co. of North
27  America, 980 F.2d 1261, 1265 (9th Cir. 1992). Section 1335 of Title 28 of the United
28  States Code provides for federal jurisdiction over interpleader actions in which any two

- 3 -

1  claimants to the fund are of diverse citizenship. Statutory interpleader is proper where
2  (1) a stakeholder has a single fund worth at least $500; (2) two or more adverse claimants
3  with diverse citizenship are competing for that fund; and (3) the stakeholder has the
4  ability to deposit the fund in the Court's registry. 28 U.S.C. § 1335(a) (2005).

5  In this case, neither the United States nor the IRS is a citizen of any state. See
6  Kent v. Northern Calif. Reg'l Office of Amer. Friends Serv. Comm., 497 F.2d 1325, 1327
7  (9th Cir. 1974) ("The United States, for the purposes of interpleader statute, is not a
8  citizen of any state.");Texas v. Interstate Commerce Comm'n, 258 U.S. 158, 160 (1922)
9  (agencies of the United States "are not citizens of any State"). First American alleges that
10 limited liability partnership Ross is a citizen of Illinois, Washington, D.C., and California
11 (Carden v. Arkoma Assocs., 494 U.S. 185, 196-97 (1990) ) (limited partnership's
12 citizenship determined by reference to all of the entity's members)), and that professional
13 corporation Weiss is a citizen of Arizona (Kuntz v. Lamar Corporation, 385 F.3d 1177,
14 1182-83 (9th 2004) (an unconventional corporation is a citizen of its State of
15 incorporation and principal place of business)). See Dkt. 790, attachment 2.

16 In statutory interpleader actions, the Ninth Circuit has held that personal service is
17 a strict prerequisite to jurisdiction over a particular claimant. Cripps, 980 F.2d at 1266,
18 relying on Metropolitan Life Insurance Company v. Dumpson, 194 F.Supp. 9 (S.D.N.Y.
19 1961). Although First American properly *alleged* minimal diversity for purposes of
20 jurisdiction under § 1335, none of the nine parties sought to be added as claimant-
21 defendants have been served with process in the interpleader action. Under well-settled
22 Ninth Circuit authority, "a party cannot create diversity by naming as a defendant a party
23 who is not in fact brought into the lawsuit by service of process." Cripps, 980 F.2d 1261,
24 1266 (9th Cir. 1992). Because only claimant-defendants who have been served with
25 process may be counted for jurisdictional purposes in an interpleader action, there is
26 currently no minimum diversity between the alleged claimants, and therefore section
27 1335 confers no subject matter jurisdiction over First American's interpleader action.
28 Accordingly,

Case 2:97-cr-00466-SMM   Document 809   Filed 12/13/05   Page 5 of 5

    **IT IS HEREBY ORDERED** that the Clerk of Court dismiss the Counterclaim for Interpleader filed by First American Title Insurance Company without prejudice. (Dkts. 793-794.)

    **IT IS FURTHER ORDERED DENYING as MOOT** First American Title Insurance Company's Request for an Order Granting its Complaint in Interpleader, Discharging it, and Awarding it Attorneys' Fees and Costs. (Dkt. 807.)

    DATED this 10th day of December, 2005.

_____
Stephen M. McNamee
Chief United States District Judge

- 5 -